1  Marty B. Ready, Esq. (State Bar No. 239135)
2  **WILSON, ELSER, MOSKOWITZ**
   **EDELMAN & DICKER LLP**
3  401 West A Street, Suite 1900
4  San Diego, California 92101
   T: (619) 321-6200 | F: (619) 321-6201
5  Email:  marty.ready@wilsonelser.com

6  Attorneys for Plaintiffs,
7  Bank of America, N.A. and
   Banc of America Capital & Leasing, LLC
8

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| **BANK OF AMERICA, N.A.**, a national banking association, and **BANC OF AMERICA LEASING & CAPITAL, LLC**, a Delaware limited liability company,<br><br>*Plaintiffs,*<br><br>v.<br><br>**CTOUR INVESTMENT HOLDING INC.**, a Delaware Corporation, **CTOUR CHARTER LLC**, a California limited liability company, **CTOUR EXPRESS LLC,** a California limited liability company, **CTOUR HOLIDAY LLC**, a California limited liability company, and **US WEST SERVICE LLC**, a California limited liability company,<br><br>*Defendants.* | Case No.: 22-cv-_____<br><br><br><br>**VERIFIED COMPLAINT** |

Plaintiffs, BANK OF AMERICA, N.A. and BANC OF AMERICA LEASING & CAPITAL, LLC, hereby complain and allege by way of this Verified Complaint against defendants, CTOUR INVESTMENT HOLDING INC., CTOUR

CHARTER LLC, CTOUR EXPRESS LLC, CTOUR HOLIDAY LLC, and US WEST SERVICE LLC (collectively, "*Defendants*" or "*Obligors*") as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) in that the amount in controversy is in excess of $75,000, exclusive of interest and costs, and there is diversity between the parties.

2. Venue is proper pursuant to 28 U.S.C. § 1391(a) in that the principal place of business of defendants is located in the Central District of California, specifically Los Angeles County.

## THE PARTIES

3. Plaintiff Bank of America, N.A. ("*BANA*") is a national banking association chartered under the laws of the United States of America with its main office and principal place of business located in Charlotte, North Carolina as designated in its Articles of Association, and as such, it is a citizen of the State of North Carolina for diversity jurisdiction purposes by virtue of 28 U.S.C. § 1348.

4. Plaintiff Banc of America Leasing & Capital, LLC ("*BALC*" and, together with BANA, the "*Bank*") is a limited liability company formed under the laws of the State of Delaware, whose sole member, BANA, has its main office and principal place of business located in Charlotte, North Carolina as designated in its Articles of Association, and as such, BALC is a citizen of the State of North Carolina for diversity jurisdiction purposes by virtue of 28 U.S.C. § 1348.

5. Upon information and belief, defendant CTOUR Investment Holdings Inc. a/k/a C Tour Investment Holdings Inc. and Ctour Investment Holdings Inc., ("*Investment*" or "*Borrower*") is a Delaware corporation, which conducts business within the State of California, with its chief executive office at 222 East Huntington Drive #105, Monrovia, CA 91016, and thus is a citizen of California for diversity jurisdiction purposes.

6. Upon information and belief, defendant CTOUR Charter LLC a/k/a

C Tour Charter LLC and Ctour Charter LLC ("***Charter***") is a California limited liability company, which conducts business within the State of California, with a principal place of business located at 222 East Huntington Drive #105, Monrovia, CA 91016, whose members are Investment, a Delaware corporation with its chief executive office in California, and Charlie Liu ("***Liu***"), a California resident, and thus Charter is a citizen of California for diversity jurisdiction purposes.

7. Upon information and belief, defendant CTOUR Express LLC a/k/a C Tour Express LLC and Ctour Express LLC ("***Express***") is a California limited liability company, which conducts business within the State of California, with a principal place of business located at 222 East Huntington Drive #105, Monrovia, CA 91016, whose members are Investment, a Delaware corporation with its chief executive office in California, and Liu, a California resident, and thus Express is a citizen of California for diversity jurisdiction purposes.

8. Upon information and belief, defendant CTOUR Holiday LLC a/k/a C Tour Holiday LLC and Ctour Holiday LLC ("***Holiday***") is a California limited liability company, which conducts business within the State of California, with a principal place of business located at 222 East Huntington Drive #105, Monrovia, CA 91016, whose members are Investment, a Delaware corporation with its chief executive office in California, and Liu, a California resident, and thus Holiday is a citizen of California for diversity jurisdiction purposes.

9. Upon information and belief, defendant US West Service LLC ("***US West***" and, together with Charter, Express and Holiday, "***Guarantors***") is a California limited liability company, which conducts business within the State of California, with a principal place of business located at 222 East Huntington Drive #105, Monrovia, CA 91016, whose members are Investment, a Delaware corporation with its chief executive office in California, and Liu, a California resident, and thus US West is a citizen of California for diversity jurisdiction purposes.

## NATURE OF THE ACTION

10. This is an action by the Bank as a commercial lender (a) to enforce its rights in connection with a certain loan agreement and related notes and guaranty agreements between the Bank and Obligors, pursuant to which the Bank extended (i) an equipment loan to Investment in the original principal amount of $600,000.00, as to which the principal sum of $424,640.94 remains unpaid and due, (ii) an equipment loan to Investment in the original principal amount of $550,000.00, as to which the principal sum of $431,495.76 remains unpaid and due, and (iii) an equipment loan to Investment in the original principal amount of $825,000.000, as to which the principal sum of $647,244.48 remains unpaid and due (collectively, the "*Equipment Loan*"); (b) to enforce the Bank's rights in connection with certain absolute and unconditional commercial loan payment guaranties executed by the Guarantors with respect to the Equipment Loan, and (c) to enter a money judgment against the Guarantors pursuant to their guaranties for all of the indebtedness owing from Investment to the Bank in connection with the Equipment Loan.

## FACTUAL ALLEGATIONS

### The Equipment Loan

11. On or about April 11, 2019, BANA and Investment entered into a certain Master Loan and Security Agreement Number 48456-70000, dated April 11, 2019, and a certain Addendum to Master Loan and Security Agreement No. 48456-70000, dated December 23, 2019 (as amended, supplemented, restated, extended and/or renewed, the "*Loan Agreement*"), pursuant to which the Bank made the Equipment Loan to Investment. (A true and correct copy of the Loan Agreement is attached hereto as **Exhibit "1"**.)

12. Pursuant to the Loan Agreement there is due and owing to the Bank (a) the principal sum of $1,503,301.18 (including three installment payments due on April 5, 2020, May 5, 2020 and January 5, 2021, which were deferred as a result of the COVID19 pandemic), (b) all contract interest which has accrued and not been

paid, (c) all default interest which has accrued and not been paid, (d) all attorneys' fees and costs which have accrued and not been paid, and (e) all other fees and charges due and payable to the Bank pursuant to the Loan Agreement and any related agreements which have accrued and not been paid (collectively, together with all contract interest, default interest, attorneys' fees and costs, and other fees and charges accruing but not paid during the prosecution of this action, the "*Indebtedness*").

**The Equipment Security Notes and the Pledged Collateral**.

13.   The Equipment Loan is further evidenced by (a) that certain Equipment Security Note Number 001, dated April 11, 2019, between Investment and BALC ("*Equipment Note No. 1*"), (b) that certain Equipment Security Note Number 002, dated December 11, 2019, between Investment and BALC ("*Equipment Note No. 2*"), and (c) that certain Equipment Security Note Number 003, dated December 23, 2019, between Investment and BALC ("*Equipment Note No. 3*" and, together with Equipment Note No. 1 and Equipment Note No. 2, the "*Equipment Notes*").  (True and correct copies of the Equipment Notes are annexed hereto as **Exhibit "2"** (Equipment Note No. 1), **Exhibit "3"** (Equipment Note No. 2), and **Exhibit "4"** (Equipment Note No. 3).)

14.   The Equipment Notes were to be secured by certain motor vehicles.

15.   Pursuant to Equipment Note No. 1, Investment granted the Bank a security interest in the following two vehicles:

| *Description* | *Vehicle Identification Number* |
|---|---|
| 2018 Jiangxi Kama HT35 Bus | LA9C2BRX2JBJXK015 |
| 2018 Jiangxi Kama HT35 Bus | LA9C2BRX4JBJXK016 |

(together, the "*Note 1 Vehicles*").  (Exh. 2 at § 1 and Exhibit A.)

16.   Pursuant to Equipment Note No. 2, Investment granted the Bank a security interest in the following two additional vehicles:

///

269215727v.6

| Description | Vehicle Identification Number |
|---|---|
| 2018 Jiangxi Kama HT35 Bus | LA9C2BRX5JBJXK011 |
| 2018 Jiangxi Kama HT35 Bus | LA9C2BRX9JBJXK013 |

(together, the "***Note 2 Vehicles***").  (Exh. 3 at § 1 and Exhibit A.)

17. Pursuant to Equipment Note No. 3, Investment granted the Bank a security interest in the following three additional vehicles:

| Description | Vehicle Identification Number |
|---|---|
| 2018 Jiangxi Kama HT35 Bus | LA9C2BRX6JBJXK017 |
| 2019 Jiangxi Kama HT35 Bus | LA9C2BRX6JBJXK293 |
| 2019 Jiangxi Kama HT35 Bus | LA9C2BRX4JBJXK292 |

(collectively, the "***Note 3 Vehicles***" and, together with the Note 1 Vehicles and the Note 2 Vehicles, the "***Vehicles***").  (Exh. 4 at § 1 and Exhibit A.)

18. Each of the Equipment Notes required that Investment be the registered owner of the Vehicles.  (Exh. 2, 3 & 4 at § 5, p. 2.)  However, Investment initially was not listed as the registered owner of some of the Vehicles.  Other Obligors (particularly Charter) currently may be listed as the registered owner of some of the Vehicles.

19. The Loan Agreement, which is incorporated into each of the Equipment Notes, also granted the Bank a security interest on the following collateral (together with the Vehicles, the " ***Collateral***"):

> "(i) all parts, attachments, accessories and accessions to, substitutions, and replacements for, each item of Equipment; (ii) all accounts, chattel paper, and general intangibles arising from or related to any sale, lease, rental or other disposition of any Equipment to third parties, or otherwise resulting from the possession, use or operation of any Equipment by third parties, including instruments, investment property, deposit accounts, letter of credit rights, and supporting obligations arising thereunder or in connection therewith; (iii) all insurance, warranty and other claims  against third parties with respect to any

Equipment; (iv) all software and other intellectual property rights used in connection therewith; (v) proceeds of all of the foregoing, including insurance proceeds and any proceeds in the form of goods, accounts, chattel paper, documents, instruments, general intangibles, investment property, deposit accounts, letter of credit rights and supporting obligations; and (vi) all books and records regarding the foregoing, in each case, now existing or hereafter arising …."

(Exh. 1 at § 1).

**The Guaranties**

20. As additional security for the repayment of the Indebtedness, the Guarantors each executed and delivered to the Bank a Guaranty of the obligations under the Equipment Loan and the Equipment Notes (each a "***Guaranty***" and collectively the "***Guaranties***"), pursuant to which the Guarantors jointly and severally, absolutely and unconditionally, guaranteed the payment of the Indebtedness to the Bank when due, including any and all advances, debts, obligations and liabilities, plus any reasonable attorneys' fees and costs incurred by the Bank in the enforcement of the Guaranties. (True and correct copies of each of the Guaranties are annexed hereto as **Exhibit "5"** (Charter), **Exhibit "6"** (Express), **Exhibit "7"** (Holiday) and **Exhibit "8"** (US West).)

21. Pursuant to the terms of the Guaranties, the Guarantors waived certain rights and defenses, which included, without limitation, any right to require the Bank to proceed against Investment, or to proceed against or exhaust any security for the indebtedness of Investment, or to pursue any other remedy in the Bank's power whatsoever; any right to notice of the execution, delivery or acceptance of the Guaranty, any extension or modification of any credit extended; any right to notice of any demand, presentation, protest or diligence; any rights of subrogation, reimbursement, indemnification, setoff of contribution and any defenses under suretyship principles. (Exh. 5, 6, 7 & 8 at § 4.)

269215727v.6

22. The Loan Agreement, the Equipment Notes, the Guaranties and all other documents related to the Equipment Loan shall be collectively referred to as the "**Loan Documents**".

23. The Bank is the present direct or indirect holder of the Loan Documents.

**The Payment Defaults**

24. Each of the Equipment Notes required Investment to make monthly payments of principal and interest on the fifth day of each month as follows: (a) $8,551.01 pursuant to Equipment Note No. 1, (b) $7,484.98 pursuant to Equipment Note No. 2 and (c) $11,227.46 pursuant to Equipment Note No. 3. (Exh. 2, 3 & 4 at §2(b) at p. 2.)

25. The Loan Agreement provided that it would be an Event of Default if Investment "fails to pay any Payments or other amounts owing under any Equipment Note within 10 days of its due date." (Exh. 1, §10(1) at p. 3)

26. Investment failed to pay the monthly payments due on February 5, 2022, March 5, 2022, and April 5, 2022.

27. In fact, in January 2022, Investment advised the Bank that it would be ceasing payments on the Equipment Notes starting with the February 2022 payments.

28. By letter dated February 18, 2022 (the "***Default Notice, Acceleration and Demand Letter***"), the Bank notified Investment and Guarantors that Investment had failed to make the February 5, 2022, installment payments due on the Equipment Notes on or before February 15, 2022 (the "***February Payment Default***"). (A true and correct copy of the Default Notice, Acceleration and Demand Letter is annexed hereto as **Exhibit "9"**.)

29. Investment also failed to make the March 5, 2022, installment payments due on the Equipment Notes on or before March 15, 2022, and the April 5, 2022, installment payments due on the Equipment Notes on or before April 15, 2022.

30. Investment's failure to pay the February 5, 2022, March 5, 2022, and April 5, 2022, installments on the Equipment Notes within ten (10) days of their due date each constitutes an Event of Default under the Loan Agreement and the Equipment Notes (the "***Payment Defaults***").  (Exh. 1 at § 10(1).)

**The Title Defaults**

31. Each of the Equipment Notes specifically requires Investment to properly title the Vehicles, to reflect the Bank's lien on each title, and to provide the original titles to the Bank:

> "All items of Equipment that are motor vehicles shall at all times be registered and titled as follows:  (A) Registered Owner:  Borrower …. (B) Lienholder: Banc of America Leasing & Capital LLC …."

(Exh. 2, 3 & 4 at § 5, p. 2);

> "Borrower shall be responsible for the correct titling of all such Equipment.  Borrower shall cause the original certificates of title to be delivered to Lender for retention in Lender's files until all Obligations owing under or in connection with this Equipment Note have been paid or performed in full."

(Exh. 2, 3 & 4 at p. 3).

32. The Loan Agreement further provides that it shall be an "Event of Default" if "Borrower fails to perform or comply with any other covenant or obligation under any Loan Documentation and, if curable, such failure continues for 30 days after written notice thereof…."  (Exh. 1 at § 10(3) at p. 3.)

33. Despite the terms of the Equipment Notes, as of February 18, 2022, Obligors had not provided copies of the titles to the Note 3 Vehicles to the Bank and had not provided the Bank with the documents necessary to reflect on the titles to the Note 3 Vehicles that the Bank was the lienholder.

34. In addition to notifying Obligors of the February Payment Default, the Default Notice, Acceleration and Demand Letter notified Investment and the Guarantors that Investment had not provided the Bank with the original titles to the

Note 3 Vehicles and had not provided the Bank with the documents necessary to reflect the Bank as lienholder on the titles to the Note 3 Vehicles. (Exh. 9 at p. 3.)

35. The Default Notice, Acceleration and Demand Letter further advised Obligors that, if Investments failed to provide the titles and the necessary documents to the Bank within thirty (30) calendar days, it would constitute an additional event of default under the Loan Agreement and Guaranties. (*Id*.)

36. Despite the Default, Acceleration and Demand Letter, none of the Obligors provided the Bank with the original titles to the Note 3 Vehicles and authorization to record the Bank's lien on the titles to the Note 3 Vehicles on or before March 20, 2022, which constituted an additional Event of Default under the Loan Agreement and Equipment Note No. 3 (the "**Note No. 3 Title Default**" and, together with the Payment Defaults, the "***Defaults***"). (Exh. 1 at § 10(3).)

37. Subsequently, however, the Bank did receive the titles to the Note 3 Vehicles, but they remain titled in Charter rather than Investment.

**The Bank's Acceleration and Demand**

38. Pursuant to the Loan Agreement, upon the occurrence of any default under the Loan Agreement or the Equipment Notes, the Bank, at its option, may accelerate and demand immediate payment of any Equipment Notes and any Prepayment Amount due pursuant to any Equipment Notes. (Exh. 1 at § 11(a)(1).)

39. In addition, pursuant to the Loan Agreement, upon the occurrence of any default under the Loan Agreement or the Equipment Notes, the Bank, at its option, may charge default interest of 15% per annum or the highest amount permitted by applicable law. (Exh. 1 at § 11.)

40. The Default Notice, Acceleration and Demand Letter accelerated the Equipment Notes and demanded that the Obligors pay the Indebtedness due on Equipment Notes on or before February 28, 2022. (Exh. 9 at pp. 2-3.)

41. Despite written notice and demand for payment of the sums due to the Bank pursuant to the Agreement, none of the Obligors have paid the full

Indebtedness to the Bank.

**The Demand for Turnover of the Vehicles and Other Collateral**.

42. Among the remedies available to the Bank pursuant to the Loan Agreement upon an event of default was the right to obtain possession of the Vehicles and the other Collateral:

> "Upon the occurrence of an Event of Default, Lender may, in its discretion, exercise one or more of the following non-exclusive remedies with respect to any or all Equipment Notes or Equipment … (2) cause Borrower to promptly discontinue use of or disable any Equipment, and, at Borrower's expense, have the Equipment assembled, prepared for shipment (together with all related manuals, documents and records, and any other Collateral), and either surrendered to Lender in place or shipped (freight and insurance pre-paid) to such location as Lender may designate with the 48 contiguous United States, in the condition required under Section 4 hereof, qualified for the manufacturer's (or its authorized representative's) then-available service contract or warranty, and able to be put into immediate service and to perform at manufacturer's rated levels (if any) … [and] (4) with or without court order, enter upon the premises where Equipment is located and repossess and remove the same, all without liability for damage to such premises or by reason of such repossession…."

(Exh. 1, at § 11(a), p. 3.)

43. Pursuant to section 11(a)(2) and 11(a)(4), based on the Obligors' continuing failure to pay the Indebtedness, by email dated April 13, 2022, the Bank requested that Obligors voluntarily turnover the Vehicles and the other Collateral to the Bank (the "*Turnover Demand*"). In response, Obligors' counsel advised that Obligors would voluntarily turn over the Vehicles to the Bank. (A copy of the Bank's request and the Obligors' counsel's response is annexed hereto as **Exhibit "10"**.)

269215727v.6

44. Pursuant this agreement, Obligors turned over the Vehicles to the Bank. The Bank is in the process of preparing the Vehicles for sale, but does not expect them to bring sufficient recoveries to satisfy the Indebtedness.

## FIRST CLAIM

*(Breach of Contract - Equipment Note No. 1 – Investment)*

45. The Bank refers to and re-alleges each of the foregoing allegations of this Verified Complaint as if more fully set forth herein.

46. As set forth above, Investment defaulted under the terms of the Loan Agreement and Equipment Note No. 1.

47. As a result of the Defaults, the Bank is entitled to immediate payment in full of all sums due under Equipment Note No. 1 and the Loan Agreement.

48. The Bank has performed all of its obligations under the Loan Documents.

49. The Loan Agreement provides that in the event of a default thereunder, Investment would be liable for all legal fees, costs and expenses incurred by the Bank in connection with the enforcement of its remedies against Investment. (Exh. 1 at § 11(6).)

50. There is due and owing to the Bank pursuant to the Loan Agreement the principal sum of $424,640.94 due on Equipment Note No. 1, plus accrued and accruing interest, default rate interest, late charges, contractual costs, attorneys' fees and all other charges due to the Bank under the Loan Documents.

51. Accordingly, the Bank is entitled to a money judgment against Investment in the principal sum of $424,640.94 due on Equipment Note No. 1, plus accrued and accruing interest, default rate interest, late charges, contractual costs, attorneys' fees and all other charges due to the Bank under the Loan Documents.

/ / /

/ / /

/ / /

269215727v.6

## SECOND CLAIM

*(Breach of Contract – Equipment Note No. 2 - Investment)*

52. The Bank refers to and re-alleges each of the foregoing allegations of this Verified Complaint as if more fully set forth herein.

53. As set forth above, Investment defaulted under the terms of the Loan Agreement and Equipment Note No. 2.

54. As a result of the Defaults, the Bank is entitled to immediate payment in full of all sums due under Equipment Note No. 2 and the Loan Agreement.

55. The Bank has performed all of its obligations under the Loan Documents.

56. The Loan Agreement provides that, in the event of a default thereunder, Investment would be liable for all legal fees, costs and expenses incurred by the Bank in connection with the enforcement of its remedies against Investment. (Exh. 1 at § 11(6).)

57. There is due and owing to the Bank pursuant to the Loan Agreement the principal sum of $431,495.76 due on Equipment Note No. 2, plus accrued and accruing interest, default rate interest, late charges, contractual costs, attorneys' fees and all other charges due to the Bank under the Loan Documents.

58. Accordingly, the Bank is entitled to a money judgment against Investment in the principal sum of $431,495.76 due on Equipment Note No. 2, plus accrued and accruing interest, default rate interest, late charges, contractual costs, attorneys' fees and all other charges due to the Bank under the Loan Documents.

## THIRD CLAIM

*(Breach of Contract – Equipment Note No. 3 - Investment)*

59. The Bank refers to and re-alleges each of the foregoing allegations of this Verified Complaint as if more fully set forth herein.

60. As set forth above, Investment defaulted under the terms of the Loan Agreement and Equipment Note No. 3.

61. As a result of the Defaults, the Bank is entitled to immediate payment in full of all sums due under Equipment Note No. 3 and the Loan Agreement.

62. The Bank has performed all of its obligations under the Loan Documents.

63. The Loan Agreement provides that, in the event of a default thereunder, Investment would be liable for all legal fees, costs and expenses incurred by the Bank in connection with the enforcement of its remedies against Investment. (Exh. 1 at § 11(6).)

64. There is due and owing to the Bank pursuant to the Loan Agreement the principal sum of $647,244.48 due on Equipment Note No. 3, plus accrued and accruing interest, default rate interest, late charges, contractual costs, attorneys' fees and all other charges due to the Bank under the Loan Documents.

65. Accordingly, the Bank is entitled to a money judgment against Investment in the principal sum of $647,244.48 due on Equipment Note No. 3, plus accrued and accruing interest, default rate interest, late charges, contractual costs, attorneys' fees and all other charges due to the Bank under the Loan Documents.

## FOURTH CLAIM

### *(Breach of Guaranty –Charter)*

66. The Bank refers to and re-alleges each of the foregoing allegations of this Verified Complaint as if more fully set forth herein.

67. As set forth above, Investment has defaulted under the Loan Agreement and the Equipment Notes.

68. As a result of Investment's defaults under the Loan Agreement and the Equipment Notes, Charter is liable to the Bank for the Loan Indebtedness pursuant to the terms of its Guaranty, but has failed to make payment to the Bank therefor.

69. The Bank reasonably relied upon Charter's Guaranty in advancing sums to Investment pursuant to the Loan Agreement and the Equipment Notes.

70. The Bank has performed all terms and conditions precedent on its part to be performed pursuant to the terms of Charter's Guaranty.

71. There is due and owing to the Bank from Charter pursuant to its Guaranty, the principal sum of $1,503,381.18, plus accrued and accruing interest and default rate interest, late charges, contractual costs, attorneys' fees and all other charges due to the Bank related to the Equipment Loan.

72. Accordingly, the Bank is entitled to a money judgment against Charter in the principal sum of $1,503,381.18, plus accrued and accruing interest and default rate interest, late charges, contractual costs, attorneys' fees and all other charges due to the Bank related to the Equipment Loan.

## FIFTH CLAIM

### *(Breach of Guaranty – Express)*

73. The Bank refers to and re-alleges each of the foregoing allegations of this Verified Complaint as if more fully set forth herein.

74. As set forth above, Investment has defaulted under the Loan Agreement and the Equipment Notes.

75. As a result of Investment's defaults under the Loan Agreement and the Equipment Notes, Express is liable to the Bank for the Loan Indebtedness pursuant to the terms of its Guaranty, but has failed to make payment to the Bank therefor.

76. The Bank reasonably relied upon Express's Guaranty in advancing sums to Investment pursuant to the Loan Agreement and the Equipment Notes.

77. The Bank has performed all terms and conditions precedent on its part to be performed pursuant to the terms of Express's Guaranty.

78. There is due and owing to the Bank from Express pursuant to its Guaranty, the principal sum of $1,503,381.18, plus accrued and accruing interest and default rate interest, late charges, contractual costs, attorneys' fees and all other charges due to the Bank related to the Equipment Loan.

79. Accordingly, the Bank is entitled to a money judgment against Express in the principal sum of $1,503,381.18, plus accrued and accruing interest and default rate interest, late charges, contractual costs, attorneys' fees and all other charges due to the Bank related to the Equipment Loan.

## SIXTH CLAIM

### *(Breach of Guaranty – Holiday)*

80. The Bank refers to and re-alleges each of the foregoing allegations of this Verified Complaint as if more fully set forth herein.

81. As set forth above, Investment has defaulted under the Loan Agreement and the Equipment Notes.

82. As a result of Investment's defaults under the Loan Agreement and the Equipment Notes, Holiday is liable to the Bank for the Indebtedness pursuant to the terms of its Guaranty, but has failed to make payment to the Bank therefor.

83. The Bank reasonably relied upon Holiday's Guaranty in advancing sums to Investment pursuant to the Loan Agreement and the Equipment Notes.

84. The Bank has performed all terms and conditions precedent on its part to be performed pursuant to the terms of Holiday's Guaranty.

85. There is due and owing to the Bank from Holiday pursuant to its Guaranty, the principal sum of $1,503,381.18, plus accrued and accruing interest and default rate interest, late charges, contractual costs, attorneys' fees and all other charges due to the Bank related to the Equipment Loan.

86. Accordingly, the Bank is entitled to a money judgment against Holiday in the principal sum of $1,503,381.18, plus accrued and accruing interest and default rate interest, late charges, contractual costs, attorneys' fees and all other charges due to the Bank related to the Equipment Loan.

/ / /

/ / /

/ / /

## SEVENTH CLAIM

### *(Breach of Guaranty – US West)*

87. The Bank refers to and re-alleges each of the foregoing allegations of this Verified Complaint as if more fully set forth herein.

88. As set forth above, Investment has defaulted under the Loan Agreement and the Equipment Notes.

89. As a result of Investment's defaults under the Loan Agreement and the Equipment Notes, US West is liable to the Bank for the Indebtedness pursuant to the terms of its Guaranty, but has failed to make payment to the Bank therefor.

90. The Bank reasonably relied upon US West's Guaranty in advancing sums to Investment pursuant to the Loan Agreement and the Equipment Notes.

91. The Bank has performed all terms and conditions precedent on its part to be performed pursuant to the terms of US West's Guaranty.

92. There is due and owing to the Bank from US West pursuant to its Guaranty, the principal sum of $1,503,381.18, plus accrued and accruing interest and default rate interest, late charges, contractual costs, attorneys' fees and all other charges due to the Bank related to the Equipment Loan.

93. Accordingly, the Bank is entitled to a money judgment against US West in the principal sum of $1,503,381.18, plus accrued and accruing interest and default rate interest, late charges, contractual costs, attorneys' fees and all other charges due to the Bank related to the Equipment Loan.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiffs Bank of America, N.A. and Banc of America Leasing & Capital, LLC pray that the Court enter judgment as follows:

A. Against Defendant Investment on the Loan Agreement and Equipment Note No. 1 in the amount established by Plaintiffs, including but not limited to all principal, interest, default interest, pre-payment penalties, termination fees, late charges, contractual costs, attorneys' fees and all other charges;

B. Against Defendant Investment on the Loan Agreement and Equipment Note No. 2 in the amount established by Plaintiffs, including but not limited to all principal, interest, default interest, pre-payment penalties, termination fees, late charges, contractual costs, attorneys' fees and all other charges;

C. Against Defendant Investment on the Loan Agreement and Equipment Note No. 3 in the amount established by Plaintiffs, including but not limited to all principal, interest, default interest, pre-payment penalties, termination fees, late charges, contractual costs, attorneys' fees and all other charges;

D. Against Defendant Guarantors on the Guaranties in the amount established by Plaintiffs, including but not limited to all principal, interest, default interest, pre-payment penalties, termination fees, late charges, contractual costs, attorneys' fees and all other charges;

E. Against all Defendants for reasonable attorneys' fees and costs to the fullest extent available under law; and

F. For such other and further relief as this Court deems just, proper, and equitable.

Dated: May 12, 2022

RESPECTFULLY SUBMITTED,

**WILSON ELSER MOSKOWITZ EDELMAN AND DICKER LLP**

By: */s/ Marty B. Ready*
Marty B. Ready, Esq.
*Attorneys for Plaintiff Bank of America, N.A. and Banc of America Leasing & Capital LLC*

# VERIFICATION

RAYMOND E. RATLIFF, of full age, declares as follows:

1. I am a Senior Vice President and SAG Portfolio Manager for Banc of America Leasing & Capital LLC and Bank of America, N.A. (together, the "***Bank***"), plaintiffs in this action. I am in charge of the Bank's loans to CTOUR Investment Holding, Inc. As a result, I am fully familiar with the facts of this case with respect to the Bank's loans to the Investment. I am authorized to execute this Verification on behalf of the Bank.

2. I have read the foregoing Verified Complaint and all the allegations contained therein. Except as to allegations alleged upon information and belief, which allegations I believe to be true, all the allegations of the Verified Complaint are true based on my personal knowledge, from public records, the records of the Bank or information provided to the Bank by members, employees and agents of Investment. If called on to testify, I would testify competently as to the matters stated therein.

I declare under penalty of perjury, under the laws of the United States of America, the State of California, and the State of Illinois, that the factual statements made in this Verified Complaint are true and correct.

Executed at Chicago, Illinois on *May 06*, 2022.

_____
RAYMOND E. RATLIFF
On behalf of Plaintiffs, *Bank of America, N.A. and Banc of America Leasing & Capital LLC*